UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH GUZMAN,

                              Plaintiff,

            - against -                                      09 Civ. 4472 (PGG)

MACY'S RETAIL HOLDINGS, INC.,                   **<u>MEMORANDUM OPINION</u>**
d/b/a MACY'S EAST, MICHAEL                             **<u>& ORDER</u>**
DERVOS, and JUSTIN CHARPENTIER,

                              Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

            Plaintiff Elizabeth Guzman alleges that Defendants Macy's Retail

Holdings ("Macy's"), Michael Dervos, and Justin Charpentier subjected her to a hostile

work environment and retaliated against her for protesting sexual harassment.  (Cmplt. ¶

1).  Her complaint seeks damages and other relief under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. 2000e §§ <u>et seq.</u> ("Title VII"); the New York State Human Rights

Law, Executive Law §§ 296 <u>et seq.</u> ("NYSHRL"); the New York City Human Rights

Law, N.Y.C. Admin. Code §§ 8-107 <u>et seq.</u> ("NYCHRL"); and the New Jersey Law

Against Discrimination, N.J.S.A. §§ 10:5-1 <u>et seq.</u> ("NJLAD").  Plaintiff also seeks

damages arising from Defendants' alleged failure to notify her of her rights under the

Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1166 <u>et seq.</u>

("COBRA") when her employment was terminated.

            Macy's has moved to dismiss the Complaint in its entirety pursuant to

Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  [Docket No. 5]  Plaintiff's

constructive discharge claim under Title VII, the NYSHRL, and the NYCHRL will be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has not pled facts demonstrating that she has an "entitlement to relief" under this claim.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 558 (2007).  Plaintiff's NYCHRL hostile work environment claim will be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because the acts underlying her hostile work environment claim took place outside New York City and Plaintiff is not a New York City resident.  Plaintiff's NJLAD retaliation claim will likewise be dismissed, because none of the acts underlying Plaintiff's retaliation claim took place in New Jersey.  Finally, Plaintiff's COBRA claim will be dismissed because the Complaint fails to (1) name the plan administrator as a defendant, and (2) allege that Plaintiff was receiving health benefits when her employment was terminated on July 30, 2008.  Macy's motion to dismiss will otherwise be denied.

## <u>BACKGROUND</u>

Except for a short hiatus in 2001, Plaintiff worked for Macy's or its predecessor – Abraham & Strauss – in various locations in New Jersey and New York from 1990 until her termination in July 2008.  (Amended Cmplt. ¶¶ 10, 39)  In May 2007, Plaintiff was appointed Regional Director of Selling/Service for Macy's Metro Region.  (<u>Id.</u> ¶¶ 12, 32)  Although Plaintiff formally reported to Human Resources Regional Vice President Justin Charpentier, she alleges that her "real boss" was Regional Vice President Michael Dervos.  (<u>Id.</u> ¶ 13)

Plaintiff contends that on October 5, 2007, Dervos made an "unwelcome sexual advance" towards her in an office at a Macy's store in Wayne, New Jersey.  (<u>Id.</u> ¶ 15)  Dervos allegedly approached Plaintiff and rubbed his genitals against her body.  (<u>Id.</u> ¶ 16)  Although Plaintiff responded by saying to Dervos, "Please don't do that," Dervos

2

allegedly rubbed his genitals against Plaintiff's body a second time.  After Plaintiff again told him to stop, Dervos "gave [Plaintiff] a hard stare, and from that point all conservation ceased."  (Id. ¶¶ 16-17)

Plaintiff alleges that after the October 5, 2007 incident, Dervos retaliated against her "by ignoring her when she was in his presence, denying her assistance needed for her work, excluding her from conference calls and meetings that ordinarily she would have attended, pointedly skipping over her name when publicly reading out the staff roster, and speaking with Mr. Charpentier about trying to 'get rid of [Plaintiff].'"  (Id. ¶ 19)

On October 15, 2007, Plaintiff reported the October 5, 2007 incident and Dervos's retaliation to Charpentier.  (Id. ¶ 20)  Plaintiff claims, however, that Charpentier and Macy's Human Resources Department never investigated her allegations of sexual harassment and "never took any steps to stop Mr. Dervos's retaliatory conduct."  (Id. ¶ 21)

After Plaintiff complained to Charpentier, however, male co-workers began to treat her differently, and stopped responding to her emails and telephone calls.  (Id. ¶ 22)  In November 2007, Plaintiff again complained to Charpentier about Dervos' retaliatory conduct, but Charpentier ignored her complaints and refused to meet with her.  (Id. ¶¶ 23-24)  Shortly thereafter, Plaintiff was instructed to work exclusively at the Macy's Brooklyn, New York location, even though – as a Regional Director – she had oversight responsibility for a number of Macy's stores.  (Id. ¶ 25)

On January 24, 2008, Plaintiff attended a Macy's awards dinner.  At the dinner, Dervos publicly acknowledged all the members of his team except Plaintiff.  (Id.

¶ 27)

After the dinner, Plaintiff sent emails to Charpentier stating that she feared that her job was in jeopardy and asking for his advice.  (Id. ¶ 30)  Charpentier and Plaintiff met on January 30, 2008, and during that meeting Charpentier told Plaintiff that her position was being eliminated.  He offered her three non-regional positions that she viewed as "plainly inferior" and as a demotion:  Group Sales Manager at Macy's Willowbrook Mall store; Group Sales Manager at Macy's Cross County Mall store; and "a position in Long Island."  (Id. ¶¶ 31-32)  Charpentier also told Plaintiff that her "continued employment [at Macy's] was conditional on her not contacting any senior level executive to further grieve her complaints against Mr. Dervos."  (Id. ¶ 32)  When Plaintiff asked what "Macy's intended to do about Mr. Dervos, Mr. Charpentier told her not to 'go there,' to keep her mouth shut and to leave Mr. Dervos alone because he was 'sick.'"  (Id. ¶ 33)  Charpentier also advised Plaintiff to accept the demotion, "because as a 'single mother' she would need the benefits."  (Id. ¶ 34)

On January 31, 2008 – the day after her meeting with Charpentier – Plaintiff took a medical leave of absence at her physician's recommendation.  (Id. ¶ 39) During her last months of employment, Plaintiff had developed "severe depression" and was prescribed anti-anxiety medication and sleeping pills.  (Id. ¶ 36-37)  When Plaintiff's medical leave of absence ended on July 30, 2008, her employment was terminated.  (Id. ¶ 39)

## DISCUSSION

### I.      MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

In the context of an employment discrimination lawsuit, "a plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case."  Krasner v. HSH Nordbank AG, No. 08 Civ. 8499 (GEL), 2010 U.S. Dist. LEXIS 1305, at *14-15 (S.D.N.Y. Jan. 7, 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, 515 (2002) (addressing motion to

dismiss standard for Title VII discrimination claim); <u>Williams v. New York City Hous.</u>
<u>Auth.</u>, 458 F.3d 67, 72 (2d Cir. 2006) (<u>per</u> <u>curiam</u>) (finding <u>Swierkiewicz</u> holding equally
applicable to retaliation claims)).  In <u>Swierkiewicz</u>, the Supreme Court explained that
"the <u>McDonnell Douglas</u> burden-shifting framework 'is an evidentiary standard, not a
pleading requirement,' . . . and that to require more than Rule 8(a)'s 'simplified notice
pleading standard' would unjustifiedly impose a heightened pleading requirement on the
plaintiff.'"  <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 212 (2d Cir. 2008) (quoting <u>Swierkiewicz</u>,
534 U.S. at 512-13).

   Where a complaint's allegations do not demonstrate an "entitlement to
relief," however, or where a plaintiff has "not nudged [her] claims across the line from
conceivable to plausible, the [] complaint must be dismissed."  <u>Twombly</u>, 550 U.S. at
558, 570.

## II. <u>LEGAL ANALYSIS</u>

### A. <u>Hostile Work Environment Sexual Harassment</u>

   "To prevail on a claim of sexual harassment based on a hostile work
environment, a plaintiff must establish two elements:  "'"(1) that the workplace was
permeated with discriminatory intimidation that was sufficiently severe or pervasive to
alter the conditions of her work environment, and (2) that a specific basis exists for
imputing the conduct that created the hostile environment to the employer."'"  <u>Petrosino</u>
<u>v. Bell Atl.</u>, 385 F.3d 210, 221 (2d Cir. 2004) (quoting <u>Mack v. Otis Elevator Co.</u>, 326
F.3d 116, 122 (2d Cir. 2003), <u>cert.</u> <u>denied</u>, 540 U.S. 1016 (2003) (quoting <u>Richardson v.</u>
<u>N.Y. State Dep't of Corr. Serv.</u>, 180 F.3d 426, 436 (2d Cir. 1999))).  The same standard
applies to hostile work environment claims brought under the NYSHRL and the NJLAD.

See Schiano v. Quality Payroll Sys., 445 F.3d 597, 609 (2d Cir. 2006) ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII."); Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 576 (D.N.J. 2005) ("Because the hostile work environment analyses for Title VII claims and NJLAD claims are 'strikingly similar' the Court will analyze both simultaneously." (quoting Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005)).[1] Here, Macy's argues that Plaintiff has not adequately pled facts demonstrating that her workplace was permeated with discriminatory intimidation.  (Def. Br. 7-11; Def. Rply Br. 4-7).

In determining whether a workplace is objectively "permeated with discriminatory intimidation," a court must consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance;' (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted."  Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir.1999) (citing Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)).

Macy's argues that Plaintiff cannot demonstrate the objective prong of this analysis because the Complaint "does not allege any facts to support her conclusion that Dervos's alleged conduct was overtly sexual, nor does she set forth facts that would allow gender-motivation for Dervos's actions to be inferred."  (Def. Br. 8)  This argument is frivolous.  A female plaintiff's allegation that a male co-worker rubbed his

---

[1]  Because this Court does not have subject matter jurisdiction over Plaintiff's NYCHRL hostile work environment claim (see pp. 22-23, infra), the standards applicable to that claim are not addressed.

genitals against her body, and then repeated that action after the plaintiff asked him to stop (Cmplt. ¶ 16), has adequately alleged sexual harassment, particularly for purposes of a motion to dismiss.

        Whether this single incident of sexual harassment is sufficiently severe to make out a hostile work environment claim is a closer question.[2]   The Second Circuit has stated that a single incident of harassment – if "extraordinarily severe" – can provide a sufficient basis for a hostile work environment claim. Cruz, 202 F.3d at 570 ("[T]he plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.").  The Circuit has also "repeatedly cautioned against setting the bar [for a hostile work environment claim] too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the

---

[2]  Plaintiff appears to suggest that she can buttress her hostile work environment claim with allegations that "she was ignored by her supervisors and other members of her team, she was denied assistance needed for work, she was excluded from conference calls and meetings that she would normally have attended, and that job responsibilities were taken away [from her]."  (Pltf Br. 10)  To the extent that Plaintiff is arguing that the "confluence of the above-described circumstances" supports her hostile work environment claim, she is incorrect.  Plaintiff cannot support her hostile work environment claim by citing acts that are gender-neutral and non-sexual in nature.  See Walter v. Westdeutscher Rundfunk, ARD German Radio N.Y., No. 03 Civ. 5676 (LAK)(JCF), 2004 U.S. Dist. LEXIS 8181, at *15-16 (S.D.N.Y. May 11, 2004) (Report and Recommendation adopted by District Court) (allegations that plaintiff was "criticized…given conflicting orders…and harassed about her visa" were not recognized "as cognizable in a Title VII claim of sexual harassment" because they "are not gender based"); Gregg v. New York State Dep't of Taxation and Finance, No. 97 Civ. 1408 (MBM), 1999 WL 225534, at *12-13 (S.D.N.Y. Apr.15 1999) (plaintiff cannot support hostile work environment claim by reference to facially-neutral incidents such as "requirement that he check in via e-mail every day," "the demand that he move his office nearer [to his supervisor], his increased workload, his loss of a state car and [his supervisor's] alleged threat on July 14, 1995 that if plaintiff did not 'change [his] attitude about her' he would not pass probation").

conditions of his employment altered for the worse."  Terry, 336 F.3d at 148 (internal

quotations omitted) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70

(2d Cir. 2000)).

Courts confronted with conduct similar to that alleged here have denied

motions to dismiss, and some have even denied motions for summary judgment.  See,

e.g., Walter v. Westdeutscher Rundfunk, ARD German Radio N.Y., No. 03 Civ. 5676

(LAK)(JCF), 2004 U.S. Dist. LEXIS 8181, at *15-16 (S.D.N.Y. May 11, 2004) (Report

and Recommendation adopted by District Court) (single incident where supervisor

rubbed his own genitals in plaintiff's presence was sufficient to defeat motion to dismiss

plaintiff's hostile work environment claim); Wahlstrom, 89 F. Supp. 2d 506, 511, 521

(S.D.N.Y. 2000) (single incident where co-worker approached plaintiff from behind,

gave her a bear hug, made a grunting sound, and slapped her left buttock three times

sufficient to defeat motion for summary judgment on hostile work environment claim

because "physical contact between the parties was neither harmless nor accidental");

Yaba v. Roosevelt, 961 F. Supp. 611, 620 (S.D.N.Y. 1997) (denying motion to dismiss

hostile work environment claim based on one event, because plaintiff alleged a "serious

incident of sexual touching and harassment [that] . . . if credited by a jury, could be

judged sufficient to have created a hostile or offensive working environment")

This case is also distinguishable from others in which the single incident

of physical contact was incidental and fleeting.  See, e.g., Quinn v. Green Tree Credit

Corp., 159 F.3d 759, 763-64 (2d Cir. 1998) (finding insufficient evidence of hostile work

environment where co-employee "brushed against [plaintiff's] breasts with papers he was

carrying"); Salvatore v. KLM Royal Dutch Airlines, No. 98 Civ. 2450 (LAP), 1999 U.S.

Dist. LEXIS 15551, at *31 (S.D.N.Y. Sept. 30, 1999) (holding that allegations that

plaintiff's supervisor "brushed up against her on 'some occasions'" were insufficient to

support claim of hostile work environment); Francis v. Chemical Banking Corp., 62 F.

Supp. 2d 948, 959 (E.D.N.Y. 1999) (no actionable conduct where supervisor "brushed his

hand against [plaintiff's] buttocks"); Gonzalez v. Kahan, No. 88 Civ. 922, 1996 WL

705320, at *3 (E.D.N.Y. Nov. 25, 1996) (brief "bear hug" insufficient to support hostile

work environment claim); Lamar v. NYNEX Serv. Co., 891 F. Supp. 184, 185 (S.D.N.Y.

1995) (allegations that plaintiff's supervisor touched her hand and stared at her were "too

mild and innocuous to constitute sexual harassment as a matter of law").  Here, Plaintiff

alleges that Dervos pressed – as opposed to brushed – his genitals against her, and that he

repeated this action after she asked him to stop.

       "At the 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to

prevail ultimately, but whether the claimant is entitled to offer evidence to support the

claims.  Indeed it may appear on the face of the pleading that a recovery is very remote

and unlikely but that is not the test.'"  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.

1998) (citation omitted) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir.

1996)); see also Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998) ("[T]he

pleading requirements in discrimination cases are very lenient, even de minimis.")).  Here

– as to the first element of her hostile work environment claim – Plaintiff has pled facts

concerning unwanted sexual contact sufficient to defeat a motion to dismiss.

    **B.**    **Retaliation**

       To prevail on her Title VII retaliation claim, Plaintiff must show "'(1)

participation in a protected activity known to Macy's; (2) that the defendant knew of the

protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 173 (2d Cir. 2005) (quoting <u>McMenemy v. City of Rochester</u>, 241 F.3d 279, 282-83 (2d Cir. 2001)).  This same standard applies to Plaintiff's NYSHRL retaliation claim.[3]  <u>See</u> <u>Schiano</u>, 445 F.3d at 609 ("Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.").[4]

Macy's argues that Plaintiff's retaliation claims should be dismissed because she cannot demonstrate that she engaged in protected activity or that she suffered an adverse employment action.  (Def. Br. 15-20)  Both arguments are meritless.

The Complaint sets forth multiple instances of Plaintiff engaging in protected activity.  For example, Plaintiff alleges that she complained about the October 5, 2007 incident to her supervisor, Charpentier, on several occasions.  (Cmplt. ¶¶ 16, 20, 23, 30)  Lodging a complaint with a supervisor about an unwelcome sexual advance by a co-worker is an archetypal example of protected activity.

Macy's also misconstrues the appropriate standard for determining

---

[3]  While "the City HRL must be given 'an independent liberal construction,'" <u>Loeffler v. Staten Island Univ. Hosp.</u>, 582 F.3d 268, 278 (2d Cir. 2009) (quoting <u>Williams v. New York City Hous. Auth.</u>, 61 A.D.3d 62, 66-68 (1st Dep't 2009)), separate analysis of Plaintiff's retaliation claim under the NYCHRL is not necessary, given this Court's conclusion that Plaintiff has adequately pleaded a retaliation claim under the more restrictive Title VII and NYSHRL test.  <u>See</u> <u>Gillman v. Inner City Broad. Corp.</u>, No. 08 Civ. 8909 (LAP), 2009 U.S. Dist. LEXIS 85479, at *15 (S.D.N.Y. Sept. 18, 2009) ("[S]ince NYCHRL claims are construed more broadly than Title VII claims and NYHRL claims, so long as a plaintiff has made out federal and state claims, he has in most cases made out a city claim as well.").

[4]  Because this Court does not have subject matter jurisdiction over Plaintiff's NJLAD retaliation claim (<u>see</u> pp. 17-19, <u>infra</u>), the standards applicable to that claim are not addressed.

whether a plaintiff has engaged in protected activity.  Plaintiff is not required to

demonstrate that she was subjected to conduct that violated Title VII, but rather that she

reasonably believed that the conduct at issue was unlawful.  See Reed v. A.W. Lawrence

& Co., 95 F.3d 1170, 1178 (2d Cir. 1996) ("[A]n employee 'need not establish that the

conduct she opposed was in fact a violation of Title VII,' but rather, only that she had a

'good faith, reasonable belief' that the underlying employment practice was unlawful."

(quoting Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590,

593 (2d Cir. 1988)).  Here, accepting the Complaint's allegations as true, Plaintiff clearly

engaged in protected activity by complaining to Charpentier about an incident in which

her supervisor had rubbed his genitals against her body without her consent and in spite

of her protests.

          Macy's also argues, however, that Plaintiff has failed to plead an adverse

employment action.  (Def. Br. 18)  The Supreme Court has defined an adverse

employment action in the retaliation context as an act that "well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination."  Burlington N.

& Santa Fe R.R. Co. v. White, 548 U.S. 53, 68 (2006)(quotations omitted).  "[P]etty

slights, minor annoyances, and simple lack of good manners" will not normally constitute

adverse employment actions for purposes of a retaliation claim.  Id.  A plaintiff must

show "material adversity," because "it is important to separate significant from trivial

harms."  Id.  "[A]lleged adverse employment action must be viewed from the perspective

of the reasonable employee, 'because [Title VII's] standard for judging harm must be

objective' to avoid 'the uncertainties and unfair discrepancies that can plague a judicial

effort to determine a plaintiff's unusual subjective feelings.'"  Pacheco v. N.Y.

12

Presbyterian Hosp., 593 F. Supp. 2d 599, 627 (S.D.N.Y. 2009) (quoting id. at 68-69).

Here, Plaintiff has adequately pled multiple adverse employment actions.
For example, Plaintiff has alleged that (1) her position was eliminated after she
complained about Dervos' sexual harassment, and that the replacement positions she was
offered constituted a demotion[5]; and (2) Macy's eventually terminated her employment.
Demotion and termination are well recognized adverse employment actions.  See Morris
v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include
discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and
reprimand."); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) ("Examples of materially
adverse changes include termination of employment. . . .).  Although Plaintiff has not
alleged that her salary was reduced as a result of this demotion, this is not required,
particularly in the retaliation context where a loss of prestige or job responsibilities is
sufficient.  See, e.g., Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir.
2004) ("Employment actions that have been deemed sufficiently disadvantageous to
constitute an adverse employment action include . . . a demotion evidenced by . . . a less
distinguished title, a material loss of benefits, significantly diminished material
responsibilities, or other indices . . . unique to a particular situation." (quoting Galabya v.
New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)).

With respect to causation, Plaintiff has alleged that Macy's took adverse
employment action – in particular the elimination of Plaintiff's position and the offer of

---

[5]  While Macy's disputes this characterization (Def. Br. 19-20), Plaintiff's assertion is
plausible in light of the difference in titles and must be accepted as true on a motion to
dismiss.

allegedly inferior positions – within two to three months of her protected activity.[6] Temporal proximity is sufficient to establish the fourth element of Plaintiff's prima facie case.  See Feingold v. City of New York, 366 F.3d 138, 157 (2d Cir. 2004) (holding that the "requirement that . . . [the plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two"); Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986) (noting that "[p]roof of causal connection can be established indirectly by showing that the protected activity was followed closely by [the adverse employment action]").

With respect to the two to three month gap between Plaintiff's protected activity and her job elimination/demotion, the Second Circuit "has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation."  Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist., 411 F.3d 306, 314 (2d Cir. 2005).  In Burkybile, however, the Circuit noted that an inference of retaliatory intent has been found in cases involving a gap of as long as eight months.  Id.; see also Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as sufficiently proximate to admit of an inference of causation."); Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("Claims of retaliation are routinely dismissed when as few as three months elapse between the protected EEO activity and the alleged act of retaliation.").  Here, the two to three month gap between Plaintiff's

---

[6]  The Complaint alleges that Plaintiff's job elimination and demotion took place on January 30, 2008.  (Cmplt. ¶ 32)  The last specific date the Complaint provides for Plaintiff's complaints about Dervos' conduct is November 2007.  Id. at ¶ 23.  While Plaintiff asked Charpentier at their January 30, 2008 meeting "what Macy's intended to do about Mr. Dervos," the Complaint suggests that these queries were made after Plaintiff was told about her job elimination.  (Cmplt. ¶¶ 32-33)

protected activity and Macy's adverse employment actions is not sufficient to dispel the inference of causation.

In sum, Plaintiff has adequately alleged that she was subjected to adverse employment action after engaging in protected activity, and that there was a causal relationship between these events.  Accordingly, Macy's motion to dismiss Plaintiff's retaliation claims will be denied.

### C.    <u>Constructive Discharge</u>

Plaintiff's Title VII, NYSHRL, and NYCHRL claims rely in part on a constructive discharge theory of liability.  "'[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is <u>forced to quit involuntarily</u>.'"  <u>Petrosino</u>, 385 F.3d at 229-30 (quoting <u>Terry</u>, 336 F.3d at 151-52) (emphasis added).  The <u>sine qua non</u> of a constructive discharge claim is an assertion that the plaintiff resigned.  <u>See Cooper v. Wyeth Ayerst Lederle</u>, 106 F. Supp. 2d 479, 493 (S.D.N.Y. 2000) ("Plaintiff never resigned from her position, which is the <u>sine qua non</u> of a constructive discharge claim." (citing <u>Pena v. Brattleboro Retreat</u>, 702 F.2d 322, 325 (2d Cir. 1983)).  Here, however, Plaintiff does not allege that she resigned from her employment.  Instead, she claims that Macy's terminated her employment on July 30, 2008, after her medical leave of absence expired.  (Cmplt. ¶ 39)

Plaintiff has not asserted – either in the Complaint or in her opposition brief – that Macy's forced her to take a medical leave or that going out on medical leave was tantamount to a resignation.[7]  <u>Cf. Hoag v. Cellco P'ship</u>, No. 05 Civ. 1185 (SRU),

---

[7]  Indeed, Plaintiff asserts that her "doctor placed her on a medical leave of absence, and

2007 U.S. Dist. LEXIS 72153, at *15-16 (D. Conn. Sept. 27, 2007) (explaining that a medical leave could only be equivalent to an adverse employment action "if it is similar to a constructive discharge" and that it would resemble a constructive discharge "only if [plaintiff] can show that [her employer] forced her to take it").  Moreover, it is undisputed that Macy's terminated Plaintiff's employment on July 30, 2008, which belies any notion that Plaintiff was constructively discharged.  See Fitzgerald v. Henderson, 251 F.3d 345, 357-358 (2d Cir. 2001) ("Adverse employment actions include discharge from employment.  Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge." (citing Chertkova v. Connecticut Life Insurance Co., 92 F.3d 81, 89 (2d Cir. 1996)); Chertkova, 92 F.3d at 89 ("Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.").

Because Plaintiff has asserted not that she resigned from her employment but that she was terminated, her Title VII, NYSHRL, NYCHRL, and NJLAD claims will be dismissed to the extent that they rely on a constructive discharge theory of liability.

### D.   COBRA

Plaintiff alleges that her termination on July 31, 2008, was a "qualifying event" under COBRA, and that Macy's failure to provide notice of Plaintiff's termination to the group health plan administrator within thirty days violated COBRA.  (Cmplt. ¶¶ 62-63)  Plaintiff claims that because Macy's failed to comply with the notice requirements of COBRA, her health insurance was discontinued. (Id. ¶ 64)

---

directed her to have no further contact with Macy's until further notice, since such communication exacerbated her condition."  (Cmplt. ¶ 38)

Plaintiff's opposition brief does not dispute that her COBRA claim is defective in that she failed to (1) name the plan administrator as a defendant, and (2) allege that she was receiving health benefits as of July 31, 2008, when she was terminated.  (Pltf. Br. 19)  Accordingly, Plaintiff's COBRA claim will be dismissed with leave to amend.

### E.        State and Local Law Claims

#### 1.        NJLAD Retaliation Claim

Macy's argues that Plaintiff's claim for retaliation under the NJLAD must be dismissed because the Complaint "pleads no set of facts that state that any of the alleged retaliatory harassment, or the decisions to transfer her and to eliminate her position, took place in New Jersey."  (Def. Br. 15)  Plaintiff does not address this argument in her opposition brief, and therefore has waived this claim.  See, e.g., Levine v. Lawrence, No. 03 Civ. 1694 (DRH), 2005 U.S. Dist. LEXIS 11663, at *14 (E.D.N.Y. June 15, 2005) ("[F]ailure to adequately brief an argument constitutes waiver of that argument" at motion to dismiss stage) (citing Raniola v. Bratton, 243 F.3d 610, 613 n.1 (2d Cir. 2001)).  In any event, there is no basis for the application of New Jersey law to Plaintiff's retaliation claim.

All of the retaliatory conduct alleged by Plaintiff took place in New York, including her job elimination, demotion, and ultimate termination.  At the time of these events, Plaintiff was assigned to a Macy's store in Brooklyn.  Moreover, Plaintiff is a New York resident and Macy's is headquartered in New York.  (Cmplt. ¶¶ 7-8)  The NJLAD does not apply to a retaliation claim arising under these circumstances.  See Turkus v. Util. Mfg. Co., Inc., No. 06 Civ. 4218 (AET), 2007 U.S. Dist. LEXIS 25056, at

*4-5 (D.N.J. Apr. 2, 2007) ("Plaintiff fails to state a claim under NJLAD because, although the statutory language of NJLAD does not explicitly require the protected employment to occur in New Jersey, New Jersey courts 'have consistently . . . only applied the NJLAD if the plaintiff worked in New Jersey.'" (quoting Satz v. Taipina, No. 01 Civ. 5921, 2003 U.S. Dist. LEXIS 27237, at *46 (D.N.J. Apr. 15, 2003), aff'd, 122 F. App'x 598 (3d Cir. 2005))).  Even if the NJLAD extended to such a claim, however, under a choice of law analysis, New York rather than New Jersey law would control.

"A federal court sitting in diversity or adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."  See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989).  New York's choice of law rules apply the state interest test in employment discrimination cases.  See Robins, 923 F. Supp. at 464.  "Under that test, controlling effect is given 'to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation.'"  Id. at 465 (quoting Babcock v. Jackson, 12 N.Y.2d 473, 481 (1963)).  "Thus, the issue to be decided is whether New York or New Jersey has the greater concern with [plaintiff's retaliation] claim."  Robins, 923 F. Supp. at 464.

Because Macy's and Plaintiff are New York residents, and all of the retaliatory conduct at issue took place in New York, New York is "'intimately concerned with the outcome of this litigation,'" id. at 465 (quoting Babcock, 12 N.Y.2d at 481-82), whereas New Jersey has no interest in the resolution of Plaintiff's retaliation claim. Accordingly, Plaintiff's NJLAD retaliation claim must be dismissed.  See Cagle v. Unisys Corp., No. 99 Civ. 9575 (JSM), 2003 U.S. Dist. LEXIS 13968, at *20-21

(S.D.N.Y. Aug. 12, 2003) (dismissing NJLAD claim and applying NYSHRL law because "alleged discriminatory acts giving rise to Plaintiff's cause of action occurred during his employment in New York"); Robins, 923 F. Supp. at 464-65 (dismissing claims under NJLAD because the plaintiff was employed by company that had its principal place of business in New York, and because a "substantial part of the unlawful actions, events or omissions giving rise to the claims . . . occurred within . . . New York").

### 2.   NYSHRL Claims

#### a.   Jurisdiction

Macy's argues that this Court lacks jurisdiction over Plaintiff's (1) NYSHRL hostile work environment claim because the "alleged encounter with Dervos took place in New Jersey," and (2) NYSHRL retaliation claim because the Complaint "is completely silent on where the alleged retaliatory harassment took place." (Def. Br. 12-14)

Section 298-a of the NYSHRL provides that the NYSHRL "may be applied to acts committed outside New York State if committed against a New York State resident." Hoffmann v. Parade Publ'n, 65 A.D.3d 48, 51 (1st Dep't 2009) The NYSHRL, however, "does not provide a cause of action to a New York resident for discriminatory acts committed outside of New York by a foreign corporation." Beckett v. Prudential Ins. Co. of Am., 893 F. Supp. 234, 238 (S.D.N.Y. 1995) (citing Hammell v. Banque Paribas, 780 F. Supp. 196 (S.D.N.Y. 1991); Sherwood v. Olin Corp., 772 F. Supp. 1418 (S.D.N.Y. 1991)); see also Curto v. Med. World Communs., Inc., 388 F. Supp. 2d 101, 106 (E.D.N.Y. 2005) ("It is well settled that the NYSHRL does not provide a cause of action to a New York resident for discriminatory acts committed outside of New York by

a foreign corporation.").

Accordingly, "§ 298-a would bar plaintiff's [NYSHRL] claims only if defendants are not residents of New York and the acts of harassment did not occur in New York." Wilcox v. PRC Ltd. Pshp., No. 95 Civ. 1292, 1997 U.S. Dist. LEXIS 3854, at *13-14 (N.D.N.Y Mar. 24, 1997). In other words, Plaintiff "can defeat [a] motion to dismiss if she demonstrates either that the acts of harassment occurred in New York or that these defendants are residents of New York." Id.

Here, Plaintiff has alleged that Macy's has its principal place of business in New York and regularly does business in New York. (Cmplt. ¶ 8). "A corporation's principal place of business, rather than its state of incorporation, determines its residence." McMahan & Co. v. Donaldson, Lufkin & Jenrette Securities Corp., 727 F. Supp. 833, 834 (S.D.N.Y. 1989) (citing Allegaert v. Warren, 480 F. Supp. 817, 820 (S.D.N.Y. 1979)). Accordingly, by alleging that Macy's principal place of business is in New York, Plaintiff has alleged adequate facts to show that Macy's is a resident of New York for purposes of the NYSHRL. Macy's motion to dismiss Plaintiff's NYSHRL claims on grounds of lack of jurisdiction will be denied. See Wilcox, 1997 U.S. Dist. LEXIS 3854, at *21 (denying motion to dismiss NYSHRL claim based on New York residence of defendants).

### b.   **Failure to State a Claim**

Macy's argue that Plaintiff NYSHRL hostile work environment claim fails because Macy's "'cannot be held liable . . . for an employee's discriminatory act unless [it] became a party to it by encouraging, condoning or approving it.'" (Def. Br. 12 (quoting State Div. of Human Rights ex rel. Greene v. St. Elizabeth's Hosp., 66 N.Y. 2d

684, 687 (1985); see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 361 (S.D.N.Y. 2007) ("[C]ourts have applied a stricter standard under the state and local human rights laws with regard to the imputation of liability to an employer, requiring that the employer encourage, condone, or approve of the conduct. . . . This interpretation is rooted in [Totem Taxi v. State Human Rights Appeal Bd., 65 N.Y.2d 300 (1985)], and [Human Rights ex rel. Greene v. St. Elizabeth's Hosp., 66 N.Y.2d 684 (1985)], in which the New York Court of Appeals held that [the] NYSHRL does not impose liability on employers absent a showing that the employer became a party to the discriminatory conduct."); Heskin v. InSite Advertising, Inc., No. 03 Civ. 2508 (GBD), 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005) ("[A]n employer cannot be held liable . . . for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it.") (citations and internal quotation marks omitted); EEOC v. Rotary Corp., 297 F. Supp. 2d 643, 661 (N.D.N.Y. 2003).

Plaintiff has pleaded facts, however, demonstrating that Macy's condoned, encouraged, or approved of the discriminatory acts at issue in this case.  Plaintiff has alleged that she complained to Macy's Human Resources Regional Vice President Justin Charpentier about Dervos' sexual harassment and that he not only refused to investigate but threatened her with termination if she made further complaints to senior level management.  (Cmplt. ¶ 32)  See Melendez v. International Service Systems, Inc., No. 97 Civ. 8051 (DAB), 1999 WL 187071, at *15 (S.D.N.Y. Apr. 6, 1999) (holding that where Plaintiff alleged that she had "reported . . . discriminatory treatment . . . up the chain of command" and "no remedial action was taken," these allegations "meet the requisite pleading standard, since '[a]n employer's calculated inaction in response to

discriminatory conduct, may as readily as affirmative conduct, indicate condonation'" (quoting Greene, 66 N.Y.2d at 687)).  Accordingly, liability can be imputed to Macy's under the NYSHRL.

### 3.    NYCHRL Claims

Macy's argues that Plaintiff's NYCHRL hostile work environment claims must be dismissed because the Complaint does not allege that any harassment or retaliation occurred in New York City.  (Def. Br. 12, 15)  Because Plaintiff is not a New York City resident,[8] her ability to invoke the protections of the NYCHRL is restricted: "[a] nonresident plaintiff may invoke the protection of the City . . . Human Rights Law[] only by proving that the discriminatory act or acts took place within the jurisdiction in question."  Pearce v. Manhattan Ensemble Theater, Inc., 528 F. Supp. 2d 175, 184 (S.D.N.Y. 2007); see also Pouncy v. Danka Office Imaging, No. 06 Cv. 4777 (RPP), 2009 U.S. Dist. LEXIS 44752, at *40-41 (S.D.N.Y. May 18, 2009) ("The New York City Administrative Code limits the applicability of the NYCHRL to acts occurring within the boundaries of New York City."); Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F. Supp. 2d 549, 551 (S.D.N.Y. 2008) ("When a non-resident seeks to invoke the coverage of the New York City . . . human rights laws, he or she must show that the alleged discrimination occurred within New York City. . . ."); Duffy v. Drake Beam Mornin, No. 96 Civ. 5606, 1998 WL 252063, at *11 (S.D.N.Y. May 19, 1998) (finding that "both New York State law and the New York City Administrative Code limit the applicability of the City Human Rights Law to acts occurring within the boundaries of New York City").

---

[8]  The Complaint alleges that Plaintiff resides in Rockland County.  (Cmplt. ¶ 7)

Here, Macy's argues, and Plaintiff does not dispute, that the sole basis for Plaintiff's NYCHRL hostile work environment claim is Dervos' alleged conduct on October 5, 2007, which took place in New Jersey.  (Def. Br. 12)  Because the NYCHRL does not provide a cause of action to a non-resident of New York City complaining about sexual harassment that occurred in another state, Macy's motion to dismiss Plaintiff's NYCHRL hostile work environment claim will be granted.  See Wahlstrom, 89 F. Supp. 2d. at 527 (dismissing hostile work environment claim where incidents of harassment that formed basis of hostile work environment claim had occurred outside of New York City); see also Pouncy, 2009 U.S. Dist. LEXIS 44752, at *40-41; Pearce, 528 F. Supp. 2d at 184; Duffy, 1998 WL 252063, at *11; Salvatore, 1999 U.S. Dist. LEXIS 15551, at *49 ("The City HRL applies only to acts occurring within the boundaries of New York City."); Casper v. Lew Liebererbaum & Co., No. 97 Civ. 3016, 1998 U.S. Dist. LEXIS 4063, at *12-17 (S.D.N.Y. Mar. 31, 1998) ("Both New York State law and the Administrative Code limit the applicability of the Administrative Code to acts that occur within the boundaries of New York City.").

With respect to Plaintiff's NYCHRL retaliation claim, Plaintiff has alleged that Macy's retaliation included (1) assigning her to work solely in Macy's Brooklyn location even though her job involved regional responsibilities; (2) eliminating her position and offering her a series of inferior positions; and (3) terminating her employment.  (Cmplt. ¶¶ 25, 32, 39)  While Plaintiff has also alleged that Macy's principal office is in New York City (id. at 8), she has not alleged whether the retaliatory decisions were made, and the retaliatory actions were taken, at Macy's principal office or somewhere else.  Absent speculation and conjecture, this Court cannot find that these

alleged retaliatory decisions were made, and these alleged retaliatory actions were committed, in New York City.  Accordingly, Plaintiff's NYCHRL retaliation claim will likewise be dismissed, but with leave to amend.

## III.  <u>LEAVE TO AMEND</u>

"Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party."  <u>Jin v. Metropolitan Life Ins. Co.</u>, 310 F.3d 84, 101 (2d Cir. 2002).  "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint."  <u>Van Buskirk v. N.Y. Times Co.</u>, 325 F.3d 87, 91 (2d Cir. 2003) (citing <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d Cir. 1991)).

Leave to amend will be denied as to Plaintiff's constructive discharge claim, NYCHRL hostile work environment claim, and NJLAD claim, because any amendment would be futile.  <u>See</u> <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) (noting that futility can justify denying leave to amend).  Plaintiff has alleged that she was terminated – not that she resigned.  Accordingly, there is no claim for constructive discharge.  Similarly, the NYCHRL hostile work environment claim will be dismissed without leave to amend because the conduct underlying this claim took place in New Jersey and Plaintiff is not a resident of New York City.  Plaintiff's NJLAD retaliation claim will likewise be dismissed without leave to amend because all of the acts relating to Plaintiff's retaliation claim took place in New York.

Plaintiff will be granted leave to amend as to her COBRA claim and her NYCHRL retaliation claim.

## CONCLUSION

For the reasons stated above, Macy's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claims under Title VII, the NYSHRL, and the NYCHRL are dismissed to the extent that they are based on a constructive discharge theory. Plaintiff's NYCHRL hostile work environment claim and NJLAD retaliation claim are likewise dismissed.

Plaintiff's COBRA claim and NYCHRL retaliation claim are dismissed with leave to replead. Plaintiff's Amended Complaint is to be filed by April 9, 2010.

Macy's motion to dismiss is otherwise DENIED.

The Clerk of the Court is directed to terminate the motion. [Docket No. 5]

Dated: New York, New York
       March 29, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge